UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:
Frances F. Skinner
by her Next Friend and Guardian Ad Litem Edward Skinner,

Chapter 11
Case No: 18-12466 -FJB

*Debtor(s)*.
_____/

FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

BY DEBTOR AND THIRD PARTY PROPONENTS

Frances F. Skinner, ("Debtor" or "Skinner"), as Debtor-in-Possession, and Edward Skinner and Jermaine Skinner ("Third Party Proponents"), hereby propose the following Joint Plan of Reorganization (the "Plan") to the debtor's creditors pursuant to Section 1121, et seq., of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the Plan and its implementation is found in the [Proposed] First Amended Disclosure Statement ("Disclosure Statement") filed with the court. The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one).**

ARTICLE I – DEFINITIONS AND RULES OF CONSTRUCTION

1.1 "Administrative Claim" means any cost or expense of administration of the Estate allowed under § 503(b) of the Bankruptcy Code, and which is granted a first priority under Code Section 507(a)(l), proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date, including, without limitation, the actual and necessary costs and

expenses of preserving the Debtor's estate during the administration period, and compensation and expenses of attorneys and other professional persons awarded pursuant to Section 330 of the Code, and any fees and charges assessed against the estate under 28 U.S.C. § 1930.

1.2 "Allowed Claim" means a Claim against the Debtor: (a) which is listed in the Debtor's Schedules filed with the Court (as they may be amended or supplemented from time to time in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), other than a Disputed Claim, a Contingent Claim or an Unliquidated Claim, or a Claim to which an objection has been interposed within any period of limitation fixed by the Code, the Bankruptcy Rules, or order of the Court (except a Claim to which any objection has been overruled or denied by a Final Order); or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; (c) which has been allowed by the Court in a Final Order, but only in the amount allowed; or (d) the amount of a claim for an administrative expense or fees and/or expenses or fees of professional persons, the amount of such fees and expenses allowed by a Final Order. An Allowed Claim shall not include unmatured or post-petition interest unless otherwise stated in the Plan.

1.3 "Assets" means all property, real or personal, in which the Debtor has an interest.

1.4 "Avoidance Actions" means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.5 "Ballot" means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.6 "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

1.7 "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Massachusetts [Eastern Division] (Honorable Frank J. Bailey), or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.8 "Bankruptcy Rules" or "Rules" means: (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereof).

1.9 "Bar Date" means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor. The Bar Date was September 7, 2018 for all creditors except governmental units. In accordance with 11 U.S.C. §502(b)(9), December 25, 2018 is the Bar Date for governmental units.

1.10 "Business Day" means any day except Saturday, Sunday, or other day on which commercial banks in the Commonwealth of Massachusetts are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.11 "Cause of Action" means all claims and causes of action now owned or hereafter acquired by the Debtor, the Chapter 11 Trustee or the Liquidating Trustee, as the case may be, whether arising under the Bankruptcy Code or other federal or state law, including, without limitation, any Avoidance Actions. The term shall also include any relief that maybe sought by a trustee under the Bankruptcy Code, whether by adversary proceeding or otherwise.

1.12 "Case" means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case Number 18-12466 -FJB.

1.13 "Cash" means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 "Claim" means a claim as defined in § 101(5) of the Code.

1.15 "Claimant" means a Person holding a Claim against the Debtor.

1.16 "Class" means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17 "Collateral" means any property or interest in property of the Debtor subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Code or applicable state law.

1.18 "Confirmation" means the entry of a Final Order of the Bankruptcy Court confirming the Plan or any amended/modified Plan.

1.19 "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the signed Confirmation Order confirming the Plan or any amended/modified Plan.

1.20 "Confirmation Hearing" means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan, as it may be continued from time to time.

1.21 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan or any amended/modified Plan.

1.22 "Creditor" means the holder of a Claim.

1.23 "Days" shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 "Debtor" means Frances F. Skinner.

1.25 "Disallowed Claim" means any Claim or portion thereof which has been disallowed by a Final Order.

1.26 "Disbursing Agent" means Third Party Proponent, Edward Skinner, who is also the debtor's Next Friend and Guardian Ad Litem.

1.27 "Disclosure Statement" means the Disclosure Statement filed or to be filed by Debtor in connection with this Plan, as modified, if applicable.

1.28 "Disputed Claim" means a Claim:

(a) which is listed as disputed, contingent or unliquidated in the Debtor's Schedules as filed or as amended; or

(b) which is listed as disputed under any provision of this Plan, or

(c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.29 "Distribution(s)" means the payment(s) of Cash which are required by this Plan to be distributed to the holders of Allowed Claims.

1.30 "Effective Date" means the date that is thirty (30) days after the Confirmation Order becomes a Final Order.

1.31 "Equipment" means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.32 "Estate" means the bankruptcy estate of the Debtor including all legal or equitable interests of the Debtor in property as of the commencement of the Case, together with such other rights and interests as are described in Section 541 of the Code. The use of the term in the singular does not mean that the estates are substantively consolidated.

1.33 "Executory Contracts" means all contracts, including unexpired leases, to which the Debtor was a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.34 "Exempt Property" means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.35 "Filing Date" means June 28, 2018, the date on which the voluntary petition for relief under the Code was filed by the Debtor.

1.36 "Final Decree" means the Final Order of the Bankruptcy Court that closes the Case.

1.37 "Final Order" means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been vacated, reversed, stayed, modified, or amended, and as to which, either: (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.38 "Inventory" means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.39 "Lien" has the meaning set forth in §101(37) of the Code.

1.40 "Material Default" of the Debtor shall occur if: (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more

than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fail within 21 calendar days after the date of service of the notice of default either: (i) to cure the default, or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.41 "Miscellaneous Assets" means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.42 "Other Priority Claims" means any Claim other than Administrative Claims or Priority Tax Claims, entitled to priority in payment under §507(a) of the Bankruptcy Code.

1.43 "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.44 "Petition Date" means June 28, 2018, the date on which the voluntary petition for relief under the Code was filed by the Debtor.

1.45 "Plan" means this Joint Plan of Reorganization proposed by the Debtor and the Third Party Proponents, to the debtor's creditors pursuant to Sect. 1121 of the Code, as it may be amended and/or modified from time to time and then approved or confirmed by the Court.

1.46 "Priority Claim" means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.47 "Priority Tax Claim" means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8) of the Code.

1.48 "Professional" means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.49 "Professional Claim" means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.50 "Proof of Claim" means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.51 "Rejection Claim" means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.52 "Schedules" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.53 "Secured Claim" means any Claim, debt, or demand against the Debtor as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor, but only to the extent of the value of the Collateral as of the Confirmation Hearing or as otherwise expressly treated in the Plan.

1.54 "Third Party Proponents" shall mean Edward Skinner and Jermaine Skinner.

1.55 "Unexpired Lease" means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.56 "Unliquidated Claim" means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.57 "Undersecured Claim" means a Claim which is only partly secured by a valid and enforceable lien against property of the Debtor.

1.58 "Unsecured Claim" means any unsecured debt, demand, or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 Class A (Priority (non-tax) Claims): Class A consists of Priority Claims under § 507 other than Administrative Claims and Priority Tax Claims. The Debtor is unaware of any such claims, and no proofs of claim in this class have been filed.

2.2 Class B (PennyMac Loan Services, LLC - secured mortgage claim): Class B consists of the secured prepetition claim of PennyMac (Claim No. 2), in the amount of $381,293.99 as of the filing date, secured by a deed of trust on the Debtor's residence at 199 Brunswick Street, Boston, Massachusetts.

2.3 Class C (General Unsecured Claims): Class C consists of all general unsecured claims against the Debtor, of which there are none.

## ARTICLE III– TREATMENT OF CLAIMS AND INTERESTS

3.1. Administrative Expenses (Unclassified): Administrative Expense claims approved and allowed by the Court shall be paid in full, in cash, by the Debtor on the Effective Date or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to by the Administrative Claimant, or provided for in this Plan. Administrative claims which by their terms are not due and payable on or before the Effective Date shall be paid as and when due.

The total unpaid professional fees as of the date of this Plan are estimated to be approximately $13,400.00 (only $5,000.00 of which is covered by the pre-petition retainer), although additional fees will be incurred before the Effective Date. The Debtor is unaware of any other unpaid administrative expense claims.

Within this class are all pre-confirmation fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), which shall be paid on the Effective Date, if not paid sooner, in order for the debtor's Plan to be confirmed. In addition, after confirmation, pursuant to 28 U.S.C. § 1930(a)(6), the debtor is obligated to pay quarterly fees to the U.S. Trustee until the case is closed, (administratively or otherwise), dismissed or converted. After confirmation, the debtor shall file with the United States Trustee for each month, or portion thereof, that her case remains open (and not converted) a Monthly Post-Confirmation Summary Report (on a form to be

provided by the U.S. Trustee). The monthly Post-Confirmation Summary Report shall be due fifteen days after the end of each month.

3.2. Priority Taxes (Unclassified). There is one (1) claim in this class. The Internal Revenue Service filed a Proof of Claim (Claim No. 1) asserting priority taxes of $977.77. This claim shall be paid as follows:

The Internal Revenue Service shall be paid the amount of its claim within 60 months of the order for relief (June 28, 2018) as required pursuant to 11 U.S.C. §1129(a)(9)(C), (i.e. equal deferred cash payments in quarterly installments, payable on the last day of each month beginning with the later of the calendar quarter in which the Effective Date occurs or the calendar quarter in which the Allowed Amount of such claim is determined, and ending with the date which is five (5) years after the Petition Date, if not sooner). All payments shall include interest on the balance due of the Allowed Amount of such claim from the next prior payment to the payment date at such other rate as may be determined by the Court as of the Effective Date to satisfy the provisions of §1129(a)(9)(C) of the Code. The debtor anticipates that this will equate to equal quarterly installments of $81.48 over an approximately three (3) year period, but the debtor shall adjust the quarterly payments as necessary in order to ensure that the Internal Revenue Service shall be paid its priority tax claim in full within 60 months of the order for relief.

3.3. Class A (Priority (non-tax) Claims). Class A consists of Priority Claims under 11 U.S.C. § 507 other than Administrative Claims and Priority Tax Claims. The Debtor is unaware of any such claims, and no proofs of claim in this class have been filed. In the unlikely event that there are any allowed Claims in Class A, they shall be paid in full, in cash, by the Debtor on the Effective Date of the Plan or as soon thereafter as the amount thereof can be fixed, unless a different treatment is agreed to or provided for in this Plan.

3.4. Class B (PennyMac Loan Services, LLC - secured mortgage claim). Class B consists of the secured prepetition claim of PennyMac (Claim No. 2), in the amount of $381,293.99 as of the filing date, secured by a deed of trust on the Debtor's residence at 199 Brunswick Street, Boston, Massachusetts (the "Property"). PennyMac shall retain its lien (or receive a replacement lien) on the Property. In accord with 11 U.S.C. § 1123(a)(5)(G) and §1124(2)(A), the pre-petition arrears

of $141,508.70 shall be paid without interest in two (2) phases, so that the final arrears cure payment is made on or before month 194 of the Plan.

Phase One (Plan months 1 through 24): in equal monthly installments of $432.75; and

Phase Two (Plan months 25 through 194): in equal monthly installments of $782.75.

During the post-petition to pre-confirmation period the debtor has voluntarily maintained her regular mortgage payments of $1,694.00, and the debtor shall continue to do so, pursuant to the existing loan documents, following the Effective Date of the Plan. This class would be impaired.

3.5. Class C (General Unsecured Claims). Class C consists of all general unsecured claims against the Debtor, of which there are none. In calculating the foregoing amount the debtor did not include any general unsecured claims which the debtor scheduled as "Disputed", and for which a Proof of Claim was not timely filed. In the unlikely event that it is determined after Plan confirmation that there are any Creditors holding Claims in Class C, those claims will be impaired under the Plan and a post-confirmation modified Plan will be filed under § 1127(e) to address the treatment of Class C claims. Generally, however, any post-confirmation modified Plan filed by the Debtor would seek to provide the holders of Class C claims with a one-time total cash payment representing a (to then-be-calculated) percentage of their claim, and upon completion of all payments due to Class C creditors, the Debtor shall then be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code.

Payments on Class C claims would be mailed to the payment address of the creditor specified on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor files a change of address notice with the Court. Any payment mailed to the proper address and returned by the post office as undeliverable, or not deposited by a creditor within 180 days, shall be void and the funds may be retained by the Debtor.

## ARTICLE IV - IMPLEMENTATION OF PLAN

This is a Third Party Proponent Plan in which Edward Skinner and Jermaine Skinner are hereby committing and binding themselves to contribute between $400.00 to $500.00 towards the necessary Plan payments each month. This Plan shall be funded from income from the debtor's monthly retirement benefits, monthly rental income, the aforementioned modest

monthly financial contribution from the Third Party Proponents and from cash savings on hand on the Effective Date. The Debtor shall retain the Assets of the estate, and shall pay ordinary living expenses, pay the operating expenses for the real estate, and pay the creditors the amounts set forth in this Plan therefrom. Consistent with the provisions of this Plan and subject to any releases provided for herein, the Debtor reserves the right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction. Except as expressly provided for in this Plan, nothing in this Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in this Plan, and the allowance of any claim against the Debtor or the estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE V - RETENTION OF JURISDICTION; CLOSING

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor, the Debtor's operations, and Assets for the following purposes until the Court enters an Order closing the case:

A. To rule on the allowance or classification of claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B. To hear and determine all adversary proceedings and contested matters;

C. To allow and approve or disapprove any administrative expenses not previously allowed;

D. To determine and resolve questions concerning the existence of defaults under the Plan;

E. To modify the Plan pursuant to § 1127(b) of the Code;

F. To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Order of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G. To issue any Order necessary to carry out the Plan.

Notwithstanding the foregoing, the Confirmation Order shall entitle the Debtor to manage the Debtor's financial affairs without further Order of the Court, and shall permit the Debtor in the Debtor's discretion to obtain new and additional credit and/or loans from any source, which credit or loans may be secured by the Debtor's assets, without further Order of the Bankruptcy Court.

Upon substantial consummation of the Plan, the Case shall, upon Court Order, be administratively closed, but shall be subject to reopening to enforce the terms of this Plan and to enter a discharge.

### ARTICLE VI – MODIFICATION OR WITHDRAWALS OF PLAN

The Debtor may alter, amend, or modify the Plan under § 1127(a) of the Bankruptcy Code at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123. The Debtor may also alter, amend, or modify the Plan under § 1127(b), following the Confirmation Date but before the Effective Date. The Debtor may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to claims, avoidance actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to § 1127(e).

### ARTICLE VII - DISCHARGE

Upon completion of all payments due to the unclassified priority tax claim, the Debtor shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code (which shall include the Class B claim). The payments on all Class B claims shall not be deemed payments under the plan for purposes of § 1141(d)(5)(A).

### ARTICLE VIII - EXECUTORY CONTRACTS AND LEASES

Any prepetition Executory Contracts and Leases in effect as of the Effective Date (other than any leases to tenants) and not specifically rejected will be deemed rejected as of the Effective Date. Any Claims arising from the rejection of Contracts and Leases must be filed on

or before the Rejection Claim Bar Date. The Rejection Claim Bar Date is 30 days after the Effective Date, or, if later, 30 days after entry of any Final Order rejecting the Executory Contract or Lease. Absent the filing of a proof of claim on or before the Rejection Claim Bar Date, all Rejection Claims shall be forever barred from assertion and shall not be enforceable against the Debtor, or the Debtor's Estate, Assets, or properties. All Rejection Claims shall be Class C General Unsecured Claims.

## ARTICLE IX - MISCELLANEOUS

No creditor may take any collection action against the Debtor, or property of the estate, or of the Debtor, so long as the Debtor is not in Material Default in performing the Debtor's obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to § 1141(b) of the Code free and clear of all claims and interests except as specifically provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that the Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

Dated: February 25, 2019            Respectfully submitted,

Frances F. Skinner
By her counsel,

**/s/ David C. Crossley**
DAVID C. CROSSLEY, ESQ. (BBO#648197)
For CROSSLEY LAW OFFICES, LLC
10 Eliot Street / Route 16
Natick, MA 01760
Tel. (508) 655-6085
Fax: (508) 310-9022
Email: dcrossley@crossley-law.com

THIRD PARTY PROPONENT

Edward Skinner                                          Dated: February 15, 2019

/s/ Edward Skinner

THIRD PARTY PROPONENT

Jermaine Skinner                                        Dated: February 25, 2019

/s/ Jermaine Skinner